IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEFFERY LORENZO HAYNES, JR
DC# K72806

      Plaintiff,

v.

                                Case No. 3:23-cv-00698-MMH-MCR

SGT C BURNHAM, et al

      Defendants.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Defendants, Elijah Miller, Christopher Burnham, and Trevor Lister, (hereinafter "Defendants"), through undersigned counsel and pursuant to Rule 56, Fed. R. Civ. P., hereby move this Court for entry of Summary Judgment in their favor. As grounds, Defendants argue that this case should be dismissed for the following reasons:

      I.     Plaintiff has failed to establish a claim for an 8th amendment violation as the undisputed material facts establish that there was no 8th amendment violation to plaintiff,

      II.    Defendants are each entitled to qualified immunity.

## BACKGROUND

Plaintiff, Jeffery Lorenzo Haynes, Jr., is a prisoner at Florida State Prison.[1] Plaintiff filed a 42 U.S.C. §1983 lawsuit on March 31, 2023. *Doc 1.* On May 04, 2023, Plaintiff filed a First Amended Complaint, *Doc 5,* which is now the operative Complaint. Defendants filed a Motion to Dismiss, plaintiff's complaint, *Doc 23,* which was granted in part, dismissing the ADA claims against all defendants. *Doc. 31.* Plaintiff brings this claim against Defendants in their individual capacities. *Doc 5, at 2-3.* Plaintiff sues defendants for physical injury and excessive use of force in violation of his 8th Amendment rights requesting compensatory and punitive damages,

The Defendants now seek dismissal of the eighth Amendment claims against defendants Elijah Miller, Christopher Burnham, and Trevor Lister of the Florida Department of Corrections pursuant to Rule 56, Fed. R. Civ. P.

## ALLEGATIONS

Plaintiff alleges the incident occurred on May 16, 2019, at Hamilton Correctional Institute. *Doc 1 at 5:6-7.* Plaintiff alleges that the above three defendants, Burnham, Lister and Miller entered Plaintiff's cell and made statements to Plaintiff to drop the case against Martin C.I., or they will have him killed. *Doc 1 at 5:9-12.*[2] The plaintiff in his complaint states that he was sprayed with a chemical agent into

---

[1] Florida Department of Corrections Inmate Search as of August 04, 2025.
[2] It should be noted that plaintiff had two lawsuits concerning Martin C.I. initiated in 2021 and 2022 (21-cv-14016 and 22-cv-14006) *See Exh 2 at 10:22 – 11:13*, Plaintiff admits he was taken from Martin C.I. that day of the incident and his grievances were filed at another institution, there was no lawsuit pending, initiated or available to be dropped in 2019. *Exh 2, Pgs. 11 – 13.*

his face without provocation, punched to the ground and when he tried to run was slammed inside his cell. *Doc 1 at 5:14-17.* Plaintiff states that during these events he did not resist or threaten the officers. *Doc 1 at 6:23.* The plaintiff further states he was handcuffed and while in restraints he was kicked punched and struck with weapons. *Doc 1 at 6:20.* Plaintiff states that he was handcuffed in the cell. *Exh 2 at 18:17 – 19:7.* The plaintiff states that the kicking, punching and beating occurred while he was in handcuffs in the cell. *Exh 2 at 19:13 – 20:14.* When asked how he got out the cell, the plaintiff states he was pulled out. *Exh 2 at 21:8-12.* Later when confronted with a statement that said he tried to run out the cell to get away, he admits to trying to run out the cell. *Exh 2 at 24:4-19.* In earlier statements the plaintiff states he defended himself, when asked what that mean he says he balled up, "I just ball up," that he didn't throw a punch. *Exh 2 at 22:6-13.*

The plaintiff goes on to say he was served with disciplinary reports for battery or attempted battery on corrections staff, *Doc 1 at 7:35,* and found guilty of the disciplinary offense and placed on max segregation lock down for twenty-seven (27) months. *Doc 1 at 8:46-47, see also Exhibit 5, Disciplinary Report.*

Plaintiff states injuries include blood gushing from his head *Doc 1 at 5:18,* bleeding from his eye, head, lacerations to his face, bruises and abrasions to his face and head, and sutures to the right side of his face. *Doc 1 at 6:21-22. See also Exh 1 (*response to interrogatories #3, describing injuries as "head injuries, bleeding from my eye, face and I had numerous bruises and abrasions to the face medical also

examined me and applied sutures to the right side of my face and treatment to my head.").  In his deposition the plaintiff states his head was "bust open" for which they gave him ointment and wrapped it, it healed on his own, *Exh 2, Deposition at 33:11-17, 34:14-23.*, he received sutures by his right eyebrow, *Exh 2 at 35:13-36:7*, and a bruise on the left side of his face for which he received ointment, *Exh 2 at36:21-37:1*, plaintiff says these were the extent of the injuries. *Id.*

The defendant officers allege that on May 16, 2019, they were responding to the cell which contained inmate Jeffery Haynes in order to do a wellness check as he appeared under the influence of an unknown subject. *Exh 3, use of force reports, at 1, See also use of force in entirety.*  Officers Lister and Burnham entered the cell and attempted to assist the plaintiff in getting up to his feet to place him in hand restraints. *Id.* Plaintiff then became combative, broke free of the grasps of Burnham and Lister, used his hands to push them away, then attempted to lunge past Officer Battles, who was blocking the door. *Id.*  Burnham and Lister were able to grab the plaintiff and attempted to take him to the ground, Inmate Hayes continued to resist and used clenched fists to punch Burnham and Lister. *Id at 2.* The plaintiff got out the holds of the officers and was lunging towards Battles by the door, Battles used his Chemical agent and sprayed the plaintiff in his face and torso area. *Id.* The plaintiff continued to violently throw punches at the officers and managed to get past the officers at the door of the cell. *Id.* Miller attempted to grab the plaintiff now outside the cell, but Haynes continued to punch and strike Miller in the upper body and face. *Id.* Plaintiff

Hayes grabbed Miller by his shirt at which point Miller punched Plaintiff in order to free himself of plaintiff's grasp on his shirt, Battle and Miller were then able to force the plaintiff to the floor and call for additional officers, at that point Hayes was placed in handcuffs and taken to the H-Dormitory for a decontamination shower. Officer Lister's injuries included bruising to his bicep and abrasions to his hand, *Exh 4 at 1,* Burnham had cuts on his finger and palm, redness to his face, neck and palms, *Exh 4 at 3,* Miller had redness to his body, arms and face, abrasions on his forearm, burns on the side of his chin, abrasions on his chest, *Exh 4 at 5,* Battles had swelling around his eye and pain in his right hand, *Exh 4 at 7.*

On May 29, 2019, the plaintiff received an approval on a Disciplinary Report for which he was given 96 days loss of gain time and 53 days in disciplinary confinement. *See Exh. 5, Disciplinary Report in its entirety.*

Based on the statement of facts where officer battles states that on May 16, 2019, at approximately 11:33am, he was present on wing one of g- dormitory at cell G1-115 with Sergeant C. Burnham, officers T. Lister and E. Miller conducting a wellness check on inmate Haynes, Jeffery DC# K72806 due to him appearing to be under influence of an unknown substance. Upon entry into the cell officer Lister and sergeant Burnham were assisting inmate Haynes to his feet to place him in hand restraints. It was at this time inmate Haynes became physically combative breaking free of the grasps of sergeant Burnham and officer Lister by utilizing both his hands to push them away then attempting to lunge out of the cell door. To prevent inmate Haynes from breaching the cell door while being combative Sergeant Burnham and Officer Lister attempted to secure a hold of inmate Haynes upper torso and upper extremities and force him to the ground chest first to prevent injuries to

fellow staff and inmate Haynes, while giving inmate Haynes
orders to cease his combative behavior, to no avail. Inmate
Haynes continued to be physically combative towards sergeant
Burnham and officer Lister striking them both with clinched
fists in the upper torso area. physical and chemical force
was utilized to overcome inmate Haynes's physical resistance
to a lawful command.
*See Exh 5 at 2*

## VIDEO EVIDENCE

Videos one and three are the same event from two different angles,
plaintiff's cell is by the center stairwell. Video one is from above the plaintiff's
cell looking down, video two looks at plaintiff's cell from the other side, from a
greater distance. The video evidence shows the officers approaching plaintiff's
cell, plaintiff's cellmate walks out the cell holding a cup in his hand. The
officers stand outside the cell, Lister goes inside, the remaining three officers
Burnham, Battles and Miller stay outside and observe, everything seems fine,
the officer's do not appear or agitated. Then something presumably happens
inside as we see the three officers react quickly and rush inside the cell. Battles
is seen backing out the cell then renters. At some point it appears the officers
at the door are pushing the plaintiff or keeping him in the cell. Miller also
backs out, plaintiff comes towards the door with his shirt torn and arms
uncuffed. Plaintiff is about to run past Battle and Miller and grabs Miller's
shirt; Miller is seen swinging at Plaintiff to gain control. Plaintiff runs under
the stairwell, outside the view of camera one and difficult to see, even

enhanced on camera two it's difficult to see. Lister exits the cell, it appears that he may be affected by the spray. For a considerable time the parties are under the stairwell. Miller is seen walking away with his shirt torn and plaintiff comes out with handcuffs and his clothes torn, visible scratches and bruises on his face. Video two, the camera is pointed at the door to the quad and we see when the plaintiff is taken through the quad door. Video four is at the showers of the other quad where the plaintiff is immediately taken to wash off the chemical spray.

The handheld camera and the continuation is after the event, gives an explanation of what occurred while plaintiff is in the decontamination shower. Plaintiff is showered, dressed and taken to medical and then taken to a new cell.

## MEMORANDUM OF LAW

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. It is 'genuine' if the record taken as a whole could lead a

rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citations omitted).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment… against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323 (emphasis original).

Applicable substantive law identifies those facts that are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine, and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Watkins v. Ford Motor Co.,* 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are

'implausible.' *Cuesta v. School Bd. of Miami-Dade County,* 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252. *See also Matsushita*, 475 U.S. at 587 (there is no genuine issue for trial if record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). In other words, Summary Judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To create an issue of fact for trial sufficient to defeat a well-supported Summary Judgment motion, the non-movant's evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit. *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) (per curiam) (unreported op.) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). For the factual issues to be genuine, they must have a real basis in the record, cannot be based merely on "information and belief" or unsupported factual allegations. *Earley*, 907 F.2d at 1081. Further, if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment."

*Scott v. Harris*, 550 U.S. 372, 380 (2007). If a fact cannot be presented in a form

that would be admissible in evidence, it cannot be used for purposes of

Summary Judgment. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir. 1999).

<u>See also</u> Rule 56(c), Fed. R. Civ. P.

**VIDEO EVIDENCE**

In cases where a video in evidence "obviously contradicts [p]laintiff's

version of the facts, we accept the video's depiction instead of [p]laintiff's

account," *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir.

2010), and "view[ ] the facts in the light depicted by the videotape," *Scott v.*

*Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

"A mere 'scintilla' of evidence supporting the opposing party's position

will not suffice; there must be enough of a showing that the jury could

reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.

1990). If, after the movant makes its showing, the nonmoving party brings

forth evidence in support of its position on an issue for which it bears the

burden of proof at trial that "is merely colorable, or is not significantly

probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477

U.S. 242, 249-250 (1986); *Baldwin County, Alabama v. Purcell Corp.*, 971 F.2d

1558 (11th Cir. 1992).

**THE USE OF FORCE WAS JUSTIFIED**

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise to claims challenging the excessive use of force. *Thomas v. Bryant*, 614 F.3d 1288, 1305 (11th Cir.2010) (reviewing categories of claims under the Eighth Amendment). An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (other citations omitted)). It is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment. *Whitley v. Albers,* 475 U.S. 312, 322 (1986). Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005). To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of

force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." See, *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted). When considering these factors, the courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." See, *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (citations omitted). Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." See, *Ort v. White*, 813 F.2d 318, 324–25 (11th Cir. 1987). When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. See, *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted). Indeed, "[t]hat deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches in prison discipline." *Whitley*, 475 U.S. at 322; see also *Bell v. Wolfish*, 441 U.S. 520, 547, (1979). "To establish a claim for excessive force in violation of the Eighth Amendment, a plaintiff must show (1) that the force was sadistically

and maliciously applied for the very purpose of causing harm, … and (2) that more than a de minimis injury resulted." See, *Fischer v. Ellegood*, 238 F. App'x 428, 432 (11th Cir. 2007)(internal citation and quotation marks omitted). The question of whether a prison guard "inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, at 320-21. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates; but the Courts have acknowledged that "both situations may require prison officials to act quickly and decisively… [and] should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" See, *Hudson v. McMillian*, 503 U.S. 1 (1992)(quoting *Whitley*, 475 U.S. at 321-22; *Brown v. Smith*, 813 F.2d 1187 (11 Cir. 1987). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" See, *Skrtich v. Thorton*, 280 F.3d 1295, 1300 (11th Cir. 2002)(quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Furthermore, that officials followed prison regulations in

administering force or restraint provides evidence that they acted in good faith and not to inflict pain (see, *Thompson v. Quinn*, 2013 WL 2151715 (N.D. Fla. 2013).

Both the Supreme Court and the Eleventh Circuit have recognized that summary judgment is appropriate in certain scenarios even if there is a conflicting version of events. [W]hen "opposing parties tell two different stores, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it," a court should not adopt the contradicted version for purposes of ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380…This is so because when the non-movant's assertion is "so utterly discredited" by the record, no "genuine" dispute of material fact exists sufficient to prompt an inference on behalf of the non-movant. (See, *Steverson v. White*, 2017 WL 1155378 (M.D. Fla. 2017) citing *Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015); and *Perez v. Suszczynski*, 809 F.3d 1213, 1221 (11th Cir. 2016)). The Courts have long understood and when appropriate, should defer to the judgment of the prison official's judgment in the held understanding that "prison guards are charged with maintaining order and protecting inmates and staff. Indeed, Eighth Amendment jurisprudence permits prison guards leeway to use force when necessary 'to maintain or restore discipline.'" *Whitley*, at 320.

## APPLICATION OF HECK v HUMPHREY

In *Heck v. Humphrey*, 512 US 477 (1994), the Supreme Court held that a state prisoner's claim for damages "is not cognizable under § 1983... [if] a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S.at 487. The Supreme Court extended Heck's holding to a prisoner's challenge to disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641, 643 (1997). There, the Supreme Court held that a prisoner's claim "for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under §1983." *Id.* at 648. The test is whether a civil judgment in the prisoner's favor would necessarily negate the underlying punishment. See *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003).

However, *Heck* does not bar every civil lawsuit that arises from an incident for which the plaintiff was convicted of an offense or received a disciplinary infraction. "[F]or Heck to apply, it must be the case that a successful §1983 suit and the underlying conviction be logically contradictory." *Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007). "In other words, as long as it is possible that a §1983 suit would not negate the underlying conviction, then the suit is not Heck-barred." *Id.* at 879–80. Thus, the "Heck inquiry sounds in

theoretical possibility," asking "whether it is possible that the facts could allow a successful §1983 suit and the underlying conviction both to stand without contradicting each other." *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1193 (11th Cir. 2020).

In the matter at hand, *Heck* does not bar the plaintiff from bringing a claim for excessive force against the defendants, but it does prevent the Court from accepting that the plaintiff did nothing which required a use of force, the Court must accept that the plaintiff struck the officers and fought the officers in the cell, to do otherwise would imply the invalidity of his conviction or sentence." *Heck*, 512 U.S.at 487.

Moreso the injuries sustained by the officers blatantly show that they were struck by the plaintiff. The inquiry for the Court is not whether a use of force was justified, but whether the force used was reasonable. The video evidence shows that the plaintiff was never handcuffed in the cell, as he clearly comes out with no cuffs swings at and grabs the officer; the plaintiff is on his feet running out the cell, contradicting his account of being subdued on the floor, being kicked and then dragged out the cell; it also appears that the two officers by the door were attempting to push or keep the plaintiff in the cell before he used force to run past them.

**REASONABLE FORCE**

A distinction must be made between "punishment after the fact and immediate coercive measures necessary to restore order or security." *Ort v. White*, Supra 813 F.2d at 324. When considering the factors in *Campbell v Sikes*, courts give a wide range or deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance. *Fennell v Gilstrap,* 559 F.3d 12, 1217 (11th Cir. 2009). The Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. *Hudson,* 503 U.S. at 9-10. Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Id at 9.* While a lack of serious injury is relevant to the inquiry, injury and force are only imperfectly correlated and it is the latter that ultimately counts. *Smith v Sec'y Dept of Corr.,* 524 F. App'x 511, 513 (11th Cir. 2013). A prisoner may avoid summary judgment, only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Stallworth v Tyson*, 578 F. App'x 948, 953(11th Cir. 2014).

An analysis of the factors using *Whitley,* shows that the officer's use of force did not constitute a violation of the eighth amendment. See *Whitley v Albers,* 475 U.S. 312, 321 (1986) (four factors in determining whether the application of force by a jail official was malicious or sadistic: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by responsible officials; and (4) any efforts made to temper the severity of the forceful response.) The immediate offer of medical assistance demonstrates an effort to temper the severity of the response. *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir.2009) (reversed on other grounds).  The officers certainly had a need to use force as the plaintiff had begun to strike them and actively resisted their efforts to restrain him.  The plaintiff was striking them and as we see in the video was grabbing the officers and attempting to run past them.  Also visible on video is that officers deemed plaintiff a significant threat that caused other officers to quickly rush to the scene.  Though it is unfortunate that the plaintiff was injured it appears that his injuries were consistent with the level of resistance he gave and thus the use of force was proportional to the need. *See Exh 4, medical records showing injuries on officers consistent with a plaintiff attacking them*. See *Fennell,* 559 F.3d at 1217 (wide range or deference to prison officials acting

to preserve discipline and security, including when considering decisions made at the scene of a disturbance).

Thus, given the sudden need for the use of force by the officers in responding to a non-compliant inmate, the officer's actions as described and from what is seen on the video are proportional to the level of resistance and force they encountered, the injuries to their upper torso of the officers are all consistent that the use of force was necessary reasonable and proportional.

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

To the extent Plaintiff sues Defendants in their individual capacity, the defendants are entitled to qualified immunity. The Court should dismiss Plaintiff's Complaint with prejudice against all defendants.

Public officials are immune in their individual capacities from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *DeWald v. Wyner*, 674 So.2d 836, 839 (Fla. 4th DCA 1996) (quoting *Harlow v. Fitzgerald*, 457 US. 800, 818 (1982). The rule of immunity shields all but the plainly incompetent or those who knowingly violate the law.  Id. "Only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Walsingham v. Dockery*, 671 So.2d

166, 171 (Fla. 1st DCA 1996) (emphasis in original). "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *City of Hialeah v. Fernandez*, 661 So.2d 335, 339 (Fla. 3d DCA 1995). The subjective intent of a government actor defendant plays no part in the qualified immunity analysis; rather, objective legal reasonableness is the touchstone. Id.

Qualified immunity involves two distinct elements: (1) the government official must show that the acts complained of were within the scope of his discretionary authority when the allegedly wrongful acts occurred, and if the government official carries that burden, (2) the plaintiff must show that the government official's actions violated clearly established statutory or constitutional law. *DeWald v. Wyner*, 674 So.2d 836, 840 (Fla. 4th DCA 1996). Under the doctrine of Qualified Immunity generally a plaintiff must meet two requirements before qualified immunity may be rejected." *Hall v Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020). First, a plaintiff must show "that the official violated [his] statutory or constitutional right. Second, a plaintiff must show "that the right was 'clearly established' at the time of the challenged conduct." *Echols v Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019); Hall, 975 F.3d at 1275

A qualified immunity analysis of an excessive force claim requires an evaluation of the reasonableness of the force used under the "totality of the

circumstances." *See Draper v. Reynolds,* 369 F.3d 1270, 1277 (11th Cir.2004). The standard is one of objective reasonableness-whether the amount of force used by the officer was objectively reasonable in light of the facts confronting the officer on the scene. *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir.2002).

Defendants are all operating in the capacity as corrections officers intervening in a disturbance caused by a prisoner it is undisputed that they were acting within the scope of their discretionary authority. Further, there has simply been no evidence that Plaintiff has established any actions taken by the defendants that violated an established rule, statute, or that any action taken was contrary to constitutional law.

Given the totality of the circumstances, the sudden need for the use of force by the officers in responding to a non-compliant inmate, the officer's actions as described and from what is seen on the video are proportional to the level of resistance and force they encountered, the injuries to their upper torso of the officers are all consistent that the use of force was necessary, reasonable and proportional.

Thus, preexisting law dictates that Defendant is entitled to qualified immunity as all the defendants' actions in controlling a situation caused by the plaintiff actions did not violate any statutory or constitutional violations.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants, Elijah Miller, Christopher Burnham, and Trevor Lister, respectfully request this Court enter Summary Judgment in their favor as Plaintiff has failed to establish any claim for an 8th amendment violation as the facts establish that there was no 8th amendment constitutional violation, the incident is simply a dispute over the reasonableness of the force used; the evidence even in the light most favorable to the plaintiff does not support a reliable inference of wantonness in the infliction of pain.

Further, each defendant is entitled to qualified immunity and immune from suit as each acted within the scope of his discretionary authority and Plaintiff will be unable to show any violation of a clearly established statutory or constitutional right.

Respectfully Submitted,

**JAMES UTHMEIER**
**ATTORNEY GENERAL**

/s/ Broderick Taylor
Broderick Taylor, Esq.
Florida Bar No.: 0648574
Senior Assistant Attorney General
Office of the Attorney General
Civil Litigation Division - North Florida Bureau
1300 Riverplace Blvd. Ste. 405
Jacksonville, Florida 32207
Telephone: (904) 456-6471
Broderick.Taylor@myfloridalegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 04, 2025, that this Motion for Summary Judgment is being electronically filed with the clerk of court using CM/ECF and a copy of this Motion is being furnished by U.S. Mail to Jeffery Lorenzo Haynes, Jr., DC# K72806, Florida State Prison, P.O. Box 800, Raiford, Florida 32083.

*/s/ Broderick Taylor*
Broderick Taylor, Esq.
Senior Assistant Attorney General